IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| SCOTT WILSON | : |
| 26300 HAINES ROAD | : |
| CLARKSBURG, MD 20871 | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. |
| | : |
| MONTGOMERY COUNTY | : |
| PUBLIC SCHOOLS | : |
| 850 HUNGERFORD DRIVE | : |
| ROCKVILLE, MD 20850 | : |
| | : |
| Serve: Jack R. Smith, Ph.D, | : |
| Superintendent | : |
| 850 Hungerford Drive | : |
| Rockville, Maryland 20850 | : |
| | : |
| Defendant. | : |

## COMPLAINT

COMES NOW, Plaintiff, Scott Wilson, by and through his undersigned counsel and hereby sues Montgomery County Public Schools for sexual harassment/gender based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, Md. Code Ann. [St. Gov.] s20-601, et. seq., Retaliation, and in support thereof, hereby states as follows:

## PARTIES

1. Plaintiff is male and an adult resident of the State of Maryland.

2. Defendant, Montgomery County Public Schools, is organized under the laws of the State of Maryland with its primary place of business in Rockville, Maryland. Montgomery County Public Schools is a county agency working to advance the achievement of Montgomery County students.

3. The acts or omissions of defendant are the basis of this Complaint.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter based upon 28 U.S.C.A. §1331 because this matter is based a question of federal law.

5. Venue in this matter is proper based upon 28 U.S.C.A. §1391.

## FACTS OF THE CASE

6. Plaintiff was hired by Montgomery County Public Schools in 2002 as a para-educator.

7. From 2007 until 2017, when he was placed on leave, Plaintiff was employed by Defendant as a security assistant at John T. Baker Middle School in Damascus, MD.

8. Plaintiff worked on site at Defendant's location, was directed by Defendant's employees and was supervised by Defendant's employees.

9. Plaintiff was Defendant's employee.

10. Dr. Louise Worthington is the Principal at Baker Middle School and employed and supervised by Defendant.

11. As Principal of Baker Middle School, Dr. Worthington supervised Plaintiff's employment.

12. In 2014, Dr. Worthington, Principal at Baker Middle School, made a number of unwanted sexual advances towards Plaintiff.

13. In one incident, Dr. Worthington asked Plaintiff to show her around his farm after she had completed giving speeches at local elementary schools. After seeing the farm, Dr. Worthington insisted that Plaintiff show her around his house, and specifically show her his bedroom.

14. Plaintiff was extremely uncomfortable with Dr. Worthington's request but relented both because Dr. Worthington was his employer and because she had been very helpful to Plaintiff in his career as well as because Dr. Worthington was allowing Plaintiff's daughters to attend Baker Middle School despite living outside the boundary.

15. Dr. Worthington then went into Plaintiff's bedroom, laid down on his bed and told Plaintiff that she was waiting for him.

16. Plaintiff refused Dr. Worthington's request to join her in bed and insisted they go back to school.

17. In another incident, Dr. Worthington took Plaintiff's keys from him and then put them in her underwear. Dr. Worthington then walked away from him and made him follow her to her office.

18. When Plaintiff insisted she give him his keys back, Dr. Worthington did, and then asked him if the keys were wet and if they smelled good.

19. In early 2015, soon after these incidents took place, Plaintiff reported the instances of sexual harassment to Wayne Farrell, the Cluster Security Supervisor, a management level position.

20. Mr. Farrell insisted that he would investigate.

21. Instead, Mr. Farrell took Plaintiff's statement and informed Dr. Worthington of Plaintiff's claim. There was no follow up and nothing further was done.

22. After Plaintiff informed Wayne Farrell about Dr. Worthington's acts of sexual harassment, Dr. Worthington began to retaliate against Plaintiff.

23. On several occasions, Dr. Worthington left Plaintiff alone in the cafeteria during lunch periods to supervise several hundred students when there should have been multiple employees supervising in the cafeteria.

24. Another time, Dr. Worthington insisted that Plaintiff spend a day supervising an in-school suspension for a teenage girl alone. Plaintiff refused, stating that it was not appropriate for him to be in a closed room alone with a teenage girl.

25. Additionally, after seven years with his office in one space, Dr. Worthington moved Plaintiff's office next to hers so she could keep him in close proximity.

26. Furthermore, Dr. Worthington blackballed Plaintiff at four other schools where he attempted to gain new employment. In each instance, Plaintiff was determined to be highly qualified but after his interviews and reference checks, Plaintiff did not receive job offers.

27. In September 2015, Dr. Worthington placed Plaintiff on a PAR.

28. While Plaintiff successfully completed the PAR with excellent progress, the mere existence of the PAR was a stain against Plaintiff's otherwise outstanding performance record.

29. In February 2017, Plaintiff was arrested in Washington, D.C. for illegal possession of a firearm, and false impersonation of police officer.

30. Plaintiff's firearm is legally registered to him by the State of Maryland.

31. Plaintiff immediately reported the arrest and charges to his supervisors.

32. Plaintiff's supervisors instructed Plaintiff to deal with the arrest and charges and to continue to come to work as always.

33. The charges against Plaintiff were ultimately reduced to only attempted possession of an unregistered firearm and Plaintiff was sentenced to two years of unsupervised probation and court costs of $50.00.

34. Plaintiff has completed his court ordered probation without further incident and has paid his court costs.

35. In May 2017, two years after Plaintiff reported Dr. Worthington's sexual harassment to Wayne Farrell, and three months after Plaintiff's arrest, as well as shortly before Ferrell's retirement, Wayne Farrell reported Plaintiff's allegations of sexual harassment against Dr. Worthington to another MCPS employee, Daryl Williams, Upper MCPS Cluster Superintendent, a management level position.

36. Despite the fact that Plaintiff told Defendant about the arrest and charges in February 2017 at the time they occurred, Defendant deceptively alleged that it first learned of the arrest in May 2017, the same time Wayne Farrell reported Plaintiff's allegations of sexual harassment to others employed by Defendant.

37. In May 2017, Defendant used Plaintiff's arrest as subterfuge to place him on administrative leave at the same time his allegations of sexual harassment were reported to more senior supervisors.

38. Plaintiff was terminated from his employment with Defendant on or about January 3, 2018.

39. Terminating Plaintiff from his long term position with MCPS is not only a gross overreaction to Plaintiff's mistake and arrest, but Defendant also used the arrest as subterfuge in light of the other facts in this case, namely in retaliation for reporting Dr. Worthington's sexual advances and harassment.

40. There is substantial evidence of sexual harassment, retaliation, cover-up and direct threats to Plaintiff's ongoing employment with MCPS as well as his future employment prospects.

41. As a result of the sexual harassment as well as the retaliation, cover-up and his placement on administrative leave, Plaintiff's physical and mental health have suffered.

42. Due to the stress of the harassment, retaliation and cover-up, Plaintiff has gained a tremendous amount of weight which has greatly exacerbated his diabetes diagnosis. He is also alternately sleepless or lacking energy to do anything other than sleep.

43. Furthermore, Plaintiff has suffered from depression and anxiety and fears for the future of his children.

44. Dr. Worthington's sexually harassing conduct was unwelcome.

45. Dr. Worthington's sexually harassing conduct toward Plaintiff was based on Plaintiff's sex.

46. Dr. Worthington's conduct and Defendant's lack of response and cover-up were sufficiently severe and pervasive enough to alter the terms and conditions of Plaintiff's employment.

47. Dr. Worthington's sexual harassment and retaliation and Defendant's lack of response created an objectively abusive work environment.

48. Dr. Worthington's actions were imputable to Defendant because Defendant knew of Dr. Worthington's inappropriate and harassing behavior and nonetheless took no action to protect Plaintiff.

49. Wayne Farrell's inaction, namely not following up on Plaintiff's claims of sexual harassment in 2015, and later his action in raising Plaintiff's claim two years after the fact were both imputable to Defendant because Wayne Farrell is an employee of Defendant. As such, Defendant knew of Dr. Worthington's inappropriate behavior.

50. Furthermore, when Defendant first learned of Dr. Worthington's misconduct, it took no action to protect Plaintiff. Two years later, when reporting of the misconduct was shared with Defendant's other employees, Defendant then retaliated against Plaintiff for reporting of the harassment by placing him on leave.

51. But for Plaintiff's sex (male), Dr. Worthington, with the tacit approval of Defendant, would not have subjected Plaintiff to sexually inappropriate comments and hostile and abusive behavior.

52. Plaintiff complained to Defendant about Dr. Worthington's harassment and inappropriate conduct.

53. Plaintiff informed Defendant about Dr. Worthington's sexually inappropriate comments and abusive behavior in early 2015.

54. Defendant took no corrective action and allowed the harassing, hostile and threatening behavior to continue.

55. Further, Dr. Worthington was told that Plaintiff had filed several complaints about her, causing the harassment and hostility to intensify.

56. Defendant has an affirmative obligation to provide a workplace free from discrimination and harassment.

57. Further, on January 1, 2017, the State of Maryland enacted a policy to protect employees from workplace bullying, including the specific conduct that Plaintiff had complained of in regards to Dr. Worthington's behavior.

58. Despite this policy and an affirmative obligation to do so, Defendant took no action to protect Plaintiff.

59. Due to Dr. Worthington's harassment and retaliation, Plaintiff's workplace became hostile and intolerable.

60. Finally, in May 2017, Defendant used Plaintiff's arrest as subterfuge to place him on administrative leave at the same time his allegations of sexual harassment were reported to more senior supervisors.

61. On or about January 18, 2018, Plaintiff filed a Charge of Harassment and Discrimination with the Equal Employment Opportunity Commission, Charge No. 531-2018-01076.

62. On or about April 15, 2019, the EEOC issued its Right to Sue Letter.

63. As a result of Defendant's action and inaction, Plaintiff has suffered and continues to suffer harm and damages, including, but not limited to, lost wages, emotional distress, pain and suffering.

## COUNT I
## SEXUAL HARASSMENT/GENDER BASED DISCRIMINATION
## TITLE VII

64. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

65. Pursuant to Title VII, it is unlawful for an employer to discriminate against an employee on the basis of his or her gender.

66. Defendant has an affirmative obligation to provide a workplace that is free from harassment and discrimination.

67. Plaintiff was subjected to a hostile work environment on the basis of his gender when Dr. Worthington, his supervisor, made inappropriate sexual statements and demands of Plaintiff.

68. Plaintiff was subjected to unequal terms and conditions of his employment on the basis of his gender when Dr. Worthington, his supervisor, made inappropriate sexual statements and demands of Plaintiff.

69. Defendant's inaction in eradicating the harassment as well as Dr. Worthington's misconduct created an intimidating, hostile and offensive working environment, which was perceived by Plaintiff to be abusive or hostile.

70. Plaintiff was subjected to unequal terms and conditions of his employment on the basis of his gender by Defendant's inaction in eradicating the harassment as well as by Dr. Worthington's misconduct.

71. Defendant's action, through employee Wayne Farrell's reporting on Plaintiff's claims of harassment two years after the fact, set off an unconscionable chain of retaliation against Plaintiff in which he was ultimately, and unjustifiably, placed on discharge in May 2017.

72. Plaintiff has suffered and continues to suffer harm and damages as a result of Defendant's actions and inaction.

COUNT II
SEXUAL HARASSMENT/GENDER BASED DISCRIMINATION
MARYLAND LAW

73. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

74. Pursuant to Md. Code Ann. [St. Gov.] s20-601, et. seq. it is unlawful for an employer to subject an employee to a hostile work environment on the basis of his or her gender.

75. Defendant has an affirmative obligation to provide a workplace that is free from harassment and discrimination.

76. Plaintiff was subjected to unequal terms and conditions of his employment on the basis of his gender when Dr. Worthington, his supervisor, made inappropriate sexual statements and demands of Plaintiff.

77. Defendant's inaction in not eradicating the harassment and Dr. Worthington's conduct created an intimidating, hostile and offensive working environment which was perceived by Plaintiff to be abusive or hostile.

78. Defendant's action, through employee Wayne Farrell's reporting on Plaintiff's claims of harassment two years after the fact, set off an unconscionable chain of retaliation against Plaintiff in which he was ultimately, and unjustifiably, placed on discharge in May 2017.

79. Plaintiff has suffered and continues to suffer harm and damages as a result of Defendant's actions and inaction.

COUNT III
RETALIATION

80. Plaintiff adopts and incorporates by reference all of the allegations set forth in the previous paragraphs as if the same were fully set forth herein.

81. Pursuant to Title VII and Maryland State law, it is unlawful for an employer to retaliate against an employee who has engaged in protected activity.

82. Plaintiff reported Dr. Worthington's sexual harassment and abusive behavior to a supervisor, Wayne Farrell when the incidents occurred in early 2015.

83. Defendant and Dr. Worthington were aware that Plaintiff had reported Dr. Worthington's acts of harassment, discrimination and hostile treatment.

84. Defendant took no action to cause Dr. Worthington to cease her harassment, discrimination and hostile behavior, which in fact, increased after Plaintiff notified Defendant of his claims against Dr. Worthington.

85. Defendant's response to Plaintiff's complaints, namely taking a statement from Plaintiff and informing Dr. Worthington of the complaints against her, was ineffective and would reasonably dissuade Plaintiff and other employees from making or supporting a charge of discrimination or harassment in the future.

86. In May 2017, two years after Plaintiff reported Dr. Worthington's harassment to his supervisor Wayne Farrell and not long after Plaintiff was arrested, Farrell informed more senior employees at MCPS of Plaintiff's 2015 sexual harassment allegations.

87. It is at this time that Defendant unjustifiably placed Plaintiff on leave, using Plaintiff's arrest as a ploy to retaliate against Plaintiff for the protected activity of raising accusations of sexual harassment against Dr. Worthington and MCPS.

88. Defendant, through Wayne Farrell's action, set off an unconscionable chain of retaliation against Plaintiff in which he was ultimately, and unjustifiably, placed on discharge in 2017.

89. Plaintiff has suffered and continues to suffer harm and damages as a result of Defendant's retaliation.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment favor of Plaintiff and against Defendant for

A. On Count I (Violation of Title VII of the Civil Rights Act of 1964), economic damages in the amount of $75,000.00 and Compensatory Damages in the Amount of $300,000;

B. On Count II (Violation of Md. Code Ann. [St. Gov] ss20-601,et seq.), economic damages in the amount of $75,000.00 and Compensatory Damages in the Amount of $75,000.00;

C. On Count III (Retaliation), economic damages in the amount of $75,000.00 and Compensatory Damages in the Amount of $300,000.00;

  D. Award Plaintiff all of his fees and costs associated with this matter, including his attorneys' fee; and

  E. Such other and further relief as this Court deems necessary based upon the facts and circumstances of this case.

## **JURY TRIAL**

  Plaintiff requests that all matters in this case be tried by a jury.

Dated: May 10, 2019       Respectfully Submitted,

             /s/Neil S. Hyman_____
             Neil S. Hyman, Esquire
             Federal Bar ID: 15158
             Law Office of Neil S. Hyman, LLC
             4520 East West Highway, Suite 700
             Bethesda, Maryland 20814
             301-841-7105 (p)
             neil@neilhymanlaw.com
             *Counsel for Plaintiff*